Good morning, Your Honors. Barry Morris, representing the Appellant. Imagine, if you will, you're a prosecutor. You're trying a death penalty case in Contra Costa County. The death penalty, of course, in such a situation, and a juror's attitudes towards the death penalty, is intrinsic to your decision as to whether or not to keep a juror. As the Who do you keep? Who do you excuse? Let's look at three jurors considered by the prosecutor. There was juror number 43. I thought I had the pages here. Juror number 43. In question by the court, juror number 43 said, on page 5 of the indictment, that he was not going to keep a juror who was from Contra Costa County. And I would like to ask the jury to please give me the situation at page 5, 435, 79 of the excerpt of record. And do you think that, if you're convinced that the aggravating factors substantially outweigh the mitigating factors, that you could return a verdict of death? Answer, I don't think so. Question, you don't think so? Answer, I don't think so. Skipping down a bit. Question, you don't believe that you could return a death verdict in a robbery murder case? Answer, no, I don't. Do you keep that juror, or do you excuse that juror? Juror number 2, that's actually number 43, I believe, on page 66 of the excerpt of record. That juror told the court, I have issues with the whole concept of special circumstances. Seems to me it is legislated by politicians to get tough on crime with the three strikes law. I don't happen to agree with either one of those. I personally don't believe that the robbery is such a special circumstance that it would require the death penalty. All right. Would you say that in those circumstances you would not impose a death verdict? Answer, it would have to be a very heinous for me to impose the death penalty related to a robbery. Mr. Morris, you're comparing these answers to the answers given by the jurors who were impaneled. Those two jurors were impaneled. The ones you write. Yes, right, were impaneled. You're asking us to compare the jurors who were impaneled to the ones who were excused. Exactly. Did the trial lawyer at the defense lawyer at trial ask the judge to do that kind of comparison? No, but interestingly, the prosecutor did. The prosecutor, in justifying his excuses, said to the court, I believe it's on page 36 of the excerpt of record. So he was not as favorable as other jurors already in the box. Yes. There are other people with stronger attitudes towards the death penalty that I would put on the panel. Isn't that his subjective judgment of their answers? Well, of course it's his subjective judgment because it's his opinion, but, you know, this is one of these questions. And the judge believed him. Well, except it wasn't true. And it not only wasn't true, but this is one of those odd circumstances where the facts shriek to the contrary. I mean, we have two jurors who the prosecutor kept on the panel who explicitly stated their opposition to the death penalty and explicitly stated their opposition to the death penalty in a robbery murder, which was charged in this case. The juror who was one of the jurors who was excused, the black lady, juror number 210, she said she would have no problem in imposing the death penalty. And the court of appeal distorted, the California court of appeal, distorted. It's hard to avoid the conclusion that the appellate court deliberately misrepresented the facts in its opinion. The juror said she was undecided in her questionnaire, but then when asked, can she oppose it, said she could. The California court of appeal said she was a skeptic. There's nothing in there to say she was a skeptic. She said she was undecided. We don't know the exact question and answer, but the fact of the matter is she said she could do her job, and nobody questioned that. Then the court of appeal said she was dismayed at the thought that she'd have to impose the death penalty. There's nothing in there to indicate dismay. And the district court was incorrect in deferring to the State court conclusions because they were objectively unreasonable. This is one of the cases. The factual conclusions that were critical, I think, were ones made by the trial court, which, as you accurately point out, didn't make the statements or didn't make, offer up the factual findings in the same terms used by the court of appeal. That's correct. The trial court did hear and deny a challenge to the jury selection. That's true. And the trial court had the advantage of being able to watch the process and form his or her own assessment. Well, you know, I — Let me just be very specific. What makes this hard for me, accepting the proposition that the lawyer, the proper justification was wrong. Let's just assume that for the moment. Now, the test isn't actually right or wrong. It's truth or falsity. That is, the attorney is allowed to be wrong if he's honestly wrong. Do we know here that the attorney really was — because ultimately the standard is purposeful racial discrimination. Do we know that we have purposeful racial discrimination here? It's hard to avoid the conclusion that we do. The reason is, is that, you know, when you talk about sitting as an appellate judge, of course one would be difficult — it would be difficult to judge a witness's credibility because you don't see the witness. But we don't have to do that because a witness's credibility goes to those issues which are in doubt, where there's some vagueness involved. There's nothing vague about saying I'm opposed to special circumstances. There's nothing vague that says I'd be reluctant to oppose the death penalty. There's nothing vague about saying I am opposed to the death penalty. The issues where the demeanor, the trial judge's observations are important are not present in this case because there is no gray area. It's perhaps a poor choice of words, but it's black and white. They said I'm opposed. I don't believe in special circumstances. I don't believe in the death penalty. And we have a black juror who says I could impose the death penalty. I wouldn't have any problem doing that. So credibility also speaks to the credibility of the justification being offered by the attorney. Exactly. And here there's no question that it wasn't credible. Well, it wasn't right. Well, it wasn't credible. It is incredible to say that there are people stronger on the jury on the death penalty when you leave two people on the jury who are opposed to the death penalty and you kick one off who says that she's — she could do it. That's not credible. I mean, this is one of these rare cases where you have a situation where the transcript, the bare, cold transcript is sufficient to conclude that the prosecutor was not telling the truth, that credibility determinations are not involved here as to what the jurors said. Demeanor is not involved. What is involved is black and white. What is involved is you have two jurors who said they were opposed to the death penalty, would have a difficulty. They said it over and over again. They were questioned. They couldn't have been clearer. And you have one juror who said she had no problem. She happened to be black. She was kicked off. The two nonblack jurors were kept on. There's no ambiguity. There's no reason to defer to the trial court. It's all in the transcript. It's not like I'm not sure or conflicting answers where an appellate court is hamstrung somewhat. I'd like to reserve two minutes of my rebuttal. Unless you want me to go on further. We're from the State. Good morning, Your Honors. Let me respond to the claim that's been made here in court. First of all, I think it's conceded in this case. Certainly it's not. Mr. Kay, why don't you identify yourself for the record. I'm sorry. Why don't you identify yourself for the record. I'm Martin Kay, Deputy Attorney General. It's an audio transcript. We know who you are. I'm Martin Kay, Deputy Attorney General, appearing for respondent. Again, in this case, I don't believe it's contested that there were race-neutral reasons given. First of all, a prima facie case was found, so we don't have a Johnson problem in this case. The court found a prima facie case, so we move on to step two. The prosecutor gave race-neutral reasons. I don't believe that the defense is seriously claiming that the reasons given were not race-neutral. So the question boils down to were they or were they not pretextual. That's a question of fact for which on appeal on habeas corpus, actually even in the district court on habeas corpus, the Petitioner has to show by clear and convincing evidence that the factual finding made by the State court was incorrect or objectively unreasonable, I guess is the more correct term. In this case, again, there were race-neutral reasons. What Petitioner contends, what his primary contention seems to be, that if you compare, in this case, Juror 210, that's the juror that we're discussing right now, the Petitioner was discussing here. If you compare Juror 210 to two other jurors that they were identical or similar and, therefore, at least as to their opposition to the death penalty, and, therefore, the prosecutor's stated reason as to disqualifying or challenging Juror 210 that she was undecided about the death penalty was a pretext. Okay. We've pointed out in our brief why comparative analysis is not permissible on appeal. Those cases in this circuit, we'll have re-hearing pending. So I'd like to go ahead. What does Miller-El do to that? Pardon? What does the Miller-El case do to that? Well, it's our position that Miller-El doesn't hold otherwise. It's true that Miller-El did do some comparative analysis in that case, but that wasn't the issue before the court. The issue before the court was had that's an error occurred. And as we pointed out in our letter brief, it's our understanding of Texas law that in Texas, you are allowed to do a comparative – Batson objection allows you to do a comparative analysis for the first time on appeal based on the record in the trial court. You can't introduce new evidence. But even though you didn't ask the trial court specifically to do a comparative analysis, Texas law allows it. So therefore, it would have been permissible to do it in Miller-El for that reason because the State law allowed it. California law is clearly contrary to that proposition. So it's not permissible. And I think there's good reason for that. Remember, you know, once you get to Step 3, once you get to Step 3, the prosecutor has given his reasons. Now the court has to make a factual finding as to whether those reasons, assuming they're race neutral, as they were in this case, were protectual, were credible, or not. Okay. The prosecutor has not been put on any notice that there's some sort of claim that, well, the reasons you gave as to Juror A also apply to Juror B, C, and D, who you didn't disqualify, or rather who you did disqualify. So therefore, that reason is protectual. He has no reason to state why, well, no, those jurors really aren't similar, either because I didn't like the way that juror spoke to me or the way that juror fidgeted in his or her chair, some sort of body language, which will, of course, not appear on the record if there's been no objection based on comparative analysis. The prosecutor's got no reason to bring that out. And a host of other reasons. And in this case, let's, you know, assuming we do a comparative analysis, Juror 210 in this case said, during voir dire, sometimes the police treat people differently in different locations of this county. And in fact, I believe I was treated unfairly, differently than other people in this county, on other locations in this county. And in addition, Juror 210 stated that she thought that persons of Hispanic descent and drug dealers were more likely to commit crimes than other people. And the victim in our case was a Hispanic drug dealer. So the prosecutor had good reason. There are good reasons available right on the record to show why this juror was not identical to the other two jurors. Neither one of those jurors said anything about some sort of anti-police bias or indication that they had been treated unfairly by the police. And remember, although this was a capital case where penalty was at issue, the prosecutor also had guilt-based considerations to take into account as well. He had to weigh everything in the totality of circumstances. And it's extremely difficult, as this Court's cases reflect, to assess with any certainty exactly where a juror's sympathies are going to lie. And so under those circumstances, it seems to me that you can't say by clear and convincing evidence at this stage of the proceeding that the other jurors were so identical to Juror 210 because they didn't express any anti-police bias or any claim that they had been treated unfairly by the police or any bias against a person like the victim that they were so similar to Juror 210 that the prosecutor's reason was a pretext. Now, if the prosecutor had identified those things about Juror 210, then maybe we wouldn't be here. Are we allowed or at what point are we allowed to go beyond what reasons really offered by the prosecutor at the time? Well, the reasons offered by the – I mean, as a general matter, I agree that Miller L. seems to indicate the Court is restricted to the reasons offered by the prosecutor. But that's in the context of a prima facie case being found and the prosecutor then pointing out the reasons why he disqualified that juror. Isn't that where we are now? Yes, but he's not been put on notice that he should also say, and by the way, if you're apply to jurors A, B, and C, those jurors are otherwise different than this juror. He has no notice that he's – that it's necessary for him to make those kinds of statements. It seems to me somewhat unfair, to say the least, to reverse a case, to hold a prosecutor accountable for not giving reasons when he's not been put on any notice. It's like there's been no objection on that ground. And it seems very unfair. Particularly – I think Judge Clifton's question is directed to the how can we now take your argument for the first time on appeal that there are other reasons about this juror that – or other factors that the prosecutor ought to be taking into consideration? Because if you are going to engage in a comparative analysis, then you've got to look at the whole record. And the whole record shows that Juror 210 had the reason. But how can we take a reason that's not given and compare it with anything? Because the reason that's not given is not a reason why he disqualified or sought to challenge Juror 210. The reason not given is a reason why Juror 210 is distinguishable from other jurors who now, for the first time on appeal, the defendant is claiming were similar to Juror 210. So those reasons are not reasons for why he's challenging Juror 210. They're reasons for distinguishing Juror 210 from other now assertedly for the first time on appeal claims that Juror 210 was identical to other jurors. Right. But we have no idea now whether the prosecutor even considered those factors that you've identified, right? We have no idea. Why can't we just take the prosecutor at his word? Well, you can take the prosecutor at his word in the sense that those are the reasons why he disqualified Juror 210 or that he sought to challenge Juror 210. But he was on no notice and he had no reason to state, and by the way, to the extent there's any argument that those reasons apply to jurors A, B, and C, those jurors are not the same. These reasons are right here on the record. The Court doesn't have to go outside the record. And, in fact, I think that several of those, the reasons are pretty plain and they're similar to the reasons that the prosecutor gave for disqualifying Juror 287. Right. But he didn't say that with respect to 210. No, he didn't, because he thought, presumably, that the reason he gave was sufficient. And he wasn't placed on any notice as to distinguishing Juror 210 from other assertedly now, for the first time on appeal, similar jurors. If we're down to about 10 seconds, is there any final point you'd like to make? Yes. I'd like to make one other point. Even if you accept the notion that you can do comparative analysis, and even if you accept the notion that, in this case, comparative analysis shows some basis for believing the prosecutor's reason was a pretext, compare this case to Miller L, where the Court said, using comparative analysis, that an inference of discrimination could be made, and then look at all the other factors which the Court used to find, by clearing and convincing evidence that the State court finding was unreasonable, objectively unreasonable. You had an outright policy in Miller L, a long-term policy, existent at the time, of discrimination against black jurors. You had the jury shuffle system, and you had the overwhelming percentage of blacks who were disqualified or who were challenged. None of that exists in this case. And, in fact, we've given reasons why, even if you do comparative analysis, there are good reasons or distinctions to be made between the jurors. So I think even if, even accepting that you can do a comparative analysis, and even accepting that using that analysis, some inference can be drawn of pretext, the question becomes, is that clear and convincing evidence to show, to rebut the State, the presumption of correctness of the State court finding? And I don't think, by itself, it is under these circumstances. Thank you. Well, first, I would like to correct a misstatement. It is no longer California law that comparative analysis cannot be conducted the first time on appeal. The California Supreme Court recently recognized, I think it's Peeble v. Ward, I don't remember the exact name of the case, but I sent a letter brief to the Court advising the California Supreme Court. Just reading from your letter, because I haven't looked at the case otherwise, it says, even assuming that we must conduct. So I may fall a little short of the California Supreme Court has now held. No, of course, because the issue wasn't presented there. They did reason that way. But there's another case that followed it that I didn't think worth sending to the Court that uses the same language, and it's appeared. I ran it through Lexis since about 11 cases now in various circuits, which have, you Secondly, the Court is correct that Miller L. restricts the consideration of the reasons given by the prosecutor to the reasons given by the prosecutor. Now, to say that the prosecutor wasn't placed on notice is a misnomer. The prosecutor since Batson and even earlier, since 1978 in Wheeler in the State of California, has been placed on notice that he has to justify his decision to kick a minority off when challenged and when there's a prima facie case. But he's not told who he's supposed to compare the given panel member with. He may offer a justification that applies to seven panel members, but doesn't apply to two over here. And if on appeal we have, okay, what about these two over here, is there something to the argument that says, well, if you're going to disregard the big mass and pick out an individual one over here, then we ought to be able to look, okay, side by side  Well, two things. First of all, the judge had an independent duty to evaluate the credibility and the accuracy of the prosecutor's representation. As the prosecutor said, compared to other jurors, this juror is not strong on the death penalty. So the prosecutor was on notice that he had to give those reasons, and he gave those reasons. Now, just pick one example. The reason given that one of the juror number 210 thought the police would treat people differently depending upon where they lived in the county, well, juror number 43, a white juror who was kept on there, felt the same way. In fact, that juror opined that having read in the newspaper that Mr. Curry had challenged systematic underrepresentation of blacks in the veneer, thought that Mr. Curry had a valid point. And yet that juror was kept on the jury. Mr. Kaye makes the point that he says we shouldn't do this comparative analysis first time on appeal. But even if we do, that then opens up the record for us to look at all of the features of each prospective juror. Do you agree with that? Well, you know, we have to take our guidance from the United States Supreme Court. There's a certain surface logic to what Your Honor says. But the United States Supreme Court has said in Miller L., which is where the reasons were proffered by the prosecutor, so that whether it makes logical sense to open up the whole comparative analysis, which I think, frankly, still works, favors granting of the writ in this case, the Supreme Court has foreclosed that analysis by saying that the prosecutor, you have to go by what the prosecutor said. So I'm not arguing that the jury. I may be factually wrong. My impression that in Miller L., the explanations were offered in the subsequent hearing, the post-Batson hearing, at which time the only focus of attention was whether there had been discrimination under Batson. That's correct. Well, at that point, the prosecutor knows this is what the whole game is about and would have an opportunity to examine or comment as against all the other jurors. Absolutely. But in Miller L., as I recall, and I haven't committed it to memory, the issue came up because other things were suggested by the dissent in the 11th or the 5th Circuit, I don't remember offhand, suggesting that there were other reasons other than the prosecutor suggested, knowing full well and having been placed on notice that Batson was at issue and comparative analysis was in play, and the Court had its own reasons, the lower court had its own reasons, and that's why the Supreme Court said, well, that may be, but you can't consider those because what the prosecutor said controls. So there we have a – I think this is clear an example where a prosecutor was on notice and the court – the lower court suggested other reasons might support the prosecutor's analysis, and the high court said no. Well, suppose we get to the point where we're doing a full-blown comparative analysis in this case. How do you respond to the State's argument, factual argument? All right. Let's talk about Juror No. 210 for a second. Juror No. 210 said that she thought that defense attorneys represented jailbirds. She was concerned that life without parole really didn't mean life without parole and that they would – that people, even though they were sentenced to life without parole, would get out early. She took courses in law enforcement. She had no problem in rendering a death verdict. You compare her to the other jurors. I mean, you go through the litany between Juror No. 31 and Juror No. 43. I put the rest of them in my brief, and it's hard to summarize them now. But what's shocking, because I'm a trial lawyer as well as an appellate lawyer and I've done this before in the trial court level, I have never seen – it's inconceivable to me why the prosecutor kept Juror No. 31 and 43 on there. Their opposition to the death penalty boarded on cause, and yet he kept them on. I mean, you've got robbery and murder. The man says, I don't think robbery and murder is special. Both of those people. Both jurors said, I don't think that robbery and murder should be a special circumstance. Rape may be mass murder. And it goes down the list. And it's all laid out in the brief. But I think either way it goes, it supports the granting of the writ. Okay. We've given you a little extra time. Thank you both for your arguments. The case is heard. It will be submitted. United States v. Bustamante-Roca is submitted on the brief.
judges: Thomas, Silverman, Clifton